Good morning, Your Honors. May it please the Court. The Director's Statement of Issues unfairly frames the dispute as whether an ordinary artisan would have found it obvious to use two seals with a plastic trash bag. That's Statement of Issues at page one. That unfair framework also permeated the Patent Office analysis, resulting in harmful error throughout. The linchpin of the Board's error relates to figure eight of Meyer and what a person of ordinary skill in the art would have understood its unlabeled dashed line to be. Mr. Cobler's affidavit established that the unlabeled dashed line in figure eight was a drawing artifact that was unintentionally left in the drawing. By way of contrast, the Board began from the very high-level observation that figures one, two, and eight consistently portray drawstrings nine, ten, and eleven within hollow duct six. From this, the Board jumped to the erroneous conclusion that there was support in the record for the examiner's statement that one could argue that the dotted bottom line of hem six is a seal. That conclusion, though, ignores the detailed by channel three on one side and channel four on the back side. That teaching is at app 456, column three, lines four and six, and then app 457. While the case law is pretty old, haven't we said that even unintended or unexplained uh drawings in a figure are can be considered in terms of what a one of skill in the art would have understood? Absolutely, your honor, and if if we didn't have Mr. Cobler's affidavit in the record then one could speculate about the meaning of that unlabeled dashed line in figure eight to a person of ordinary skill. But Mr. Cobler's affidavit makes it very clear and explains in detail why that unlabeled dash line is not a seal and in why that position which the government has consistently taken is inconsistent with both the express teaching of of the patent and how a person of ordinary skill in the art would have understood uh in looking at figure one where where there was a cross section and then and seal line was it was a solid line across and and then the the mirror image in figure eight where there was a little cross section and then as one of five dotted lines uh the unlabeled line because in that figure actual seal five is shown a bit lower down. Right but you're talking about the inventor himself saying I didn't really mean to put that line in there but how is that necessarily indicative of what others would understand in looking at that figure? Well uh no actually to be to be clear under Mr. Mr. Cobler who is is the affidavit explaining uh in in detail how he would understand how a person of ordinary skill in the art would understand uh that dotted line to to be look at a 277 through 279. But other dotted lines were labeled as sealed this just didn't happen to have a label or a number. No no your line that was labeled as a seal in figure eight is is five. The other dotted lines in there and there were a total of five all had labels and all had discussions except for the one dashed line that continues on just just below and where Mr. Cobler's affidavit explains that in in looking at the two figures uh that dot a person of ordinary skill in the art would treat that as as a as a draftsman error an unintended consequence that should have been removed and that a person of ordinary skill in the art would not have taken that to to be or to teach and seal. It makes sense you wouldn't have a seal in the middle of the bag but still it's in the inventor's control and there it is. It and and and so in that case the inventor Mr. Meyer uh had left that in uh and in the dispute now is is whether a person of ordinary skill in the art would have it have taken that unlabeled dashed line to mean anything beyond a mistake. Mr. Mr. Cobler explains why a person of ordinary skill in the art would not have and furthermore he points out the the uh the specification for both figures one and figure eight describe channels three and channels four together making a a single channel nine around the bag and he also pointed to language in in the independent claims uh the the actual quote is quote channels paren three comma four comma nine uh and in later on in the claim it says uh at least one drawstring extending through the channels the only way that happens is is if three and four together define a continuous seal if if the dotted line creates a second seal then three is no longer in communication with four and it's contrary to the teachings of the patent. So why wasn't the dotted line just removed from the drawing? It's it's not ours your honor this is the dotted line is is in a patent that was filed in 1988. This is the Meyer patent? The Meyer patent yes your honor that the dotted line is not in our patent. So do you attach any significance in figure eight of Meyer which is at 454 the joint appendix to the fact that the line to which we've been referring which the parties are referred to as line x starts out solid and then goes out in solid form and then becomes dotted. Do you attach any significance then? I have I don't know I'm just asking. So this Mr. Cobbler is in his affidavit explained that and so there is in figure one there there is a if your honor if you look on the right hand side of figure one you'll see you'll see that little cross section and but then solid line five continues all the way across from from right to left. But the the board actually said or agreed that there was ambiguity with respect to that yes right but then it turned around and said that Wern's taught right the invention so why what are we doing there? They said even even if that's ambiguous we have this other piece of prior art. Yes and there are two problems with with Wern's. First the the director grudgingly concedes that the combination does not actually Wern's does not actually itself teach the structure that is actually claimed. What but it teaches it it it teaches the the overlap right? It what what Wern's shows and and I think the answer to your question your honor is only with hindsight. What Wern's shows is is a two section two plastic bags where as as a process a manufacturing process the they're made from a single sheet and so the front the start of 23 you go up and you come down and so the first the top bag has has two full sheets. The bottom of the top bag is is seamed the way any bottom would be seen the way our bags are seen the way Meyer's bag is seen there's a at the distal end. What the what the examiner and the board did is they generalized this to the abstract idea of two two two ply let's just put a patch on there therefore it's obvious. That's not what the claim says and I submit that the the motivations to combine. But it doesn't it we've always said that that you don't have to have the same purpose as the prior art if you're doing the same thing if that if the structure is disclosed right? That's correct it doesn't have to be exactly the same but absent hindsight there is no there's no motivation to make that that when you're dealing with these sort of commodity products you don't want you want to be careful not to increase the cost manufactured using material and you don't want to further complicate the manufacturing process and I believe that's a 455 at column two. So can I ask you a question? Is Sellinger or Sellinger? Sellinger. Sellinger okay my apologies. You referred early on in your presentation to the continuous channels I think correct? You used the word continuous channels now but if you look at the pertinent portions of the specification in Meijer column three lines four through six on 456 of the appendix and column five lines 63 through 65 at 457 they don't say continuous channels they just channels three and four. Why could you not have a channel with a break in it and you'd have the you'd have the string or the drawstring of the cord in the upper part you'd still have one channel three and the other side four but it wouldn't be I would grant you continuous it would be segmented correct? In that hypothetical your honor and we had this conversation below if that dotted line forms a seal then what's referred to as three in figure eight is below the seal below the top seal and so what you would have is channel six on the front communicating with channel four on the back when you quoted the language correctly but Mr. Cobbler's affidavit says a person of ordinary skill in the art seeing that language and the claim language that's the first limitation in each of the independent claims about channels three four and six the government's position or the hypothetical you've presented eliminates channel three as having a drawstring in it because the drawstring is the drawstrings 18 the drawstrings 10 and 9 are above the the dotted line so but I'm looking at go ahead I'm thinking I'm looking at appendix I think you provide and these are helpful appendix 271 you have these drawings and on the left hand side mark 13 is a drawing with line x left out and you're saying that's the way it should be and then you're saying here's what we would have in the second drawing mark 13 where the x why couldn't you have the I mean why couldn't you have the channel in the area that's in that one up at six in the top and three is encompassing all from 13 to five but it's just been segmented at x because that's not what it shows your honor but what this shows is if you put a seal at x on page 271 you have you have separated channel three below from channel six above and the figure immediately to the right shows that drawstrings 9 and 10 pass through channel six segmenting it that way would remove channel three you've got that bottom line as the bottom of the channel I'm sorry your honor no appendix 271 yes those pages okay so so you've labeled and 270 even though the dotted line is much much lower on the back your position is that that's the bottom of the channel yes and on figure on 271 on the right our our position is the seal is the dotted line which is labeled at five while on in figure one the counterpart seal is the solid line labeled five okay let's hear from from the from the office uh I guess as a judge shawl highlighted and as council highlighted really what the disputes about is figure eight in the meyer reference and if we go back to look at figure eight again well it's not I mean I'm sorry your honor the board conceded that figure eight was so isn't the real debate the real dispute over whether or not there was a sufficient finding of a motivation to combine meyer and werns right I mean effectively looking at figure eight and you look at there's no dispute that dash line five is a seal there's no dispute about that everyone agrees the only dispute is whether or not this other line would an ordinary artisan be motivated to put a seal there if in fact it's not a seal because it doesn't explicitly say it initially the examiner said that looks like a seal because it's a dashed line just like dash line five it's up by the hem where the cords where the pull cords go through it looks like a seal they came in with an affidavit just like the opposing council said and after looking at the affidavit the declaration by mr cobbler said well there's no other to express teachings other than this line in this drawing that it's a seal so the examiner said all right even if it's not explicitly a seal and even if it's ambiguous it would have been obvious to put one there and the examiner and you say well why well when he looks at the secondary reference which I think everyone discussed the warrants reference and you look at that and yes it is a different type of package it's not a garbage bag but it's it's a it's a loose flexible bag with a drawstring with a hem and sure enough there's a seal up by where the cords are the pull cords are and the examiner note identified that reference and looked at that evidence said you know they knew to put an extra seal up there to keep those cords from falling down if they get slack so to make sure there was easy access to the cords the examiner's rationale was if you didn't have a seal in figure eight of meyer up where that unnumbered dash line is the one that's not mentioned but it's shown he says without a seal there there'd be a problem because then but what about his his argument that warrants really was for a totally different purpose right I don't think that's a problem your honor because the only reason the examiner is looking to warrants is it's another flexible bag with a drawstring and a hem and up around the top edge and sure enough they've got two seals they've got an upper seal to hold those cords up there in place and then there's a lower seal further down um here when you look at meyer the examiner says well this teaching from words would motivate an origin artisan to actually have another seal up where that unnumbered dash line is and the reason why is if you didn't have that seal there if these cords were in a loosened state for example when your trash bag isn't completely taught let's say you take your big bag and you put it into a smaller can it's going to be not taught it's going to be loose the drawstring could drop down and if it there all the way down to seal five which is a big gap and when you reach in through the opening what they call apertures for accessing the drawstrings you would have difficulty accessing the strings accordingly in the examiner's view based on that evidence it would have been obvious to put a seal there so that's the rationale if you think you go to page a ppx 390 of the um when you're saying would have been obvious so are you saying that the examiner said it was it would be obvious to combine warts and meyer are you saying that somehow this is a ksr right i don't think the examiner ever said i'm going to combine all the physical embodiments of warts and put them in meyer i think what the examiner said is i'm i need to figure out whether or not an ordinary artisan looking at figure eight of meyer would have known and would have been motivated to put an extra seal where this unnumbered dash line is and he says in light of the teachings of words that shows a seal up by that upper hem area to keep the cord from drooping down it would have been obvious to do that that's the examiner's rationale so i think you know the examiner didn't just pull that out of the air the examiner did look at other prior art the warrants reference saw that yes seals were used up closer to the channel or the duct where the cords pass through and that's exactly what you've got here with meyer you have a bag so you're saying that to the extent that there were any gaps in the motivation to combine analysis that doesn't matter because it really wasn't a pure motivation to combine case it was more a ksr this is reasonable uh ordinary artisan in light of everything that's understood would have done this right and what and how does the ordinary how do we know what the ordinary artisan understood by looking at the evidence in the record what's the show hems with seals and up near where the pull cords are and the examiner took that knowledge that an ordinary artisan would have from that evidence and said therefore if you didn't have a seal here you'd have this problem of the draw spring dropping and therefore in the examiner made a finding and said therefore an ordinary artisan would have known to add a seal there and that's why he rejected it as obvious i think that's ultimately the rationale that we're really agreeing about and i think it is based on evidence it is based on evidence in the record that's where the examiner got the teachings and i think you can see that also reiterated in the board decision where the board reiterates that rationale that the examiner's reasoning is you don't want to have a drawstring that's unaccessible in this trash bag you want to be able to get it and all the references teach that every one of the references i think meyer wurtz i think there's another kugler and piazza each one of them say you have to have access ready access to the drawstring so you can pull the strings and cinch the bag that's the idea well did i understand you to say maybe i misunderstood or misheard you did you say that there was a um we know we have the cobbler uh declaration or affidavit did you say there was also uh an affidavit submitted by the examiner no no your honor there's no act the examiner simply relied on the teachings of the reference to determine what an ordinary artist would know no there was no affidavit by the examiner um but this is the findings of the examiner in our view based on this record those findings are based on evidence in the record and that's what that's why uh those findings you know support the rejection so i think i think that's are there any other questions that you might have but i think we've addressed at least what appellant has argued here today and so the the the focus of the entire rejection is the the placement of the the lower bodied line is that fair yeah i think i think the the problem is as i had mentioned when we look at figure eight on page appendix 454 there's a nice big picture of it and um when you look at that picture you can see number five is into it's undisputed that that's a seal and then it's that gap between number five and the bottom of duck six where there's this unnumbered dash line um that we actually created this a picture of this in our brief and we point to this unnumbered dash line if you looked at page uh page 24 of our brief we've reproduced this picture this drawing from appendix 454 and we have a arrow pointed to the unnumbered dash line that we're talking about that's the line that isn't described specifically in the specification of the prior art meyer reference but the examiner says that looks like a seal and although it's ambiguous there's evidence in the record to support why an ordinary person would put a seal there and what the examiner's rationale is is if you didn't have a seal there these cords number nine number twelve number ten if they were loose in a loosened state they would drop down all the way down to dash line number five and then if you the user were to put your hands through this what they call opening aperture 814 you wouldn't be able to have easy access to that cord therefore an ordinary artisan would know and would want to put a seal right where that undumbered dash line in the meyer patent we see the words seam and seal what what exactly they they sometimes seem to be used interchangeably sometimes nowhere what do you understand to be the difference between those two words as used in minor i understand your point your honor and i've read a little confusing i've read this meyer reference probably four or five times and what i've learned is they they are a little bit loose with the language that they aren't really precise where they use certain words in different ways and for example if you go to column three on page appendix 456 of meyer at the very top they use that language seamed flap eight is seamed for example welded to the side panel as as schematically shown at five so what they're saying is seaming or sealing or welding or heat sealing these are all interchangeable terms so they take two pieces of plastic flat pieces of plastic they put them next to each other they run a heat beam across their ceiling when we see seam and seal they're kind of interchangeable as distinct from the word channel correct i think channel they also use the word duct for they talk about duct number six they also call it channel six and as you pointed out earlier um when we look at the duct six in figure eight it's the place where the drawstrings can pass and they can kind of sit inside this duct so then when you go to pick up this trash bag at the end of the week when it's filled with trash and you want to grab it and cinch it you can easily grab these strings pull them tighten it up pull the bag out and take it that's the idea and if the strings got lost in there because the opening the gap in there was very long the way figure eight reflects the examiner's point is you wouldn't be able to get those strings very easily therefore an ordinary artist would want to have a seal up at that upper rim just like wurtz has a seal at the upper rim to make sure the drawstrings don't fall down too far that's basically the the basis for the rejection so so yeah on meyer figure eight five is a seal and then when you get up by three that's kind of an open that's kind of an open area where three is and then when you get up to duct six that's an open area where the strings pass and what the examiner is saying is if you didn't have this extra seal up just to define that more narrow duct six what we're calling line x what we're calling line x exactly the string would drop down the drawstring would drop all the way down to seal five because it couldn't go beyond seal five because that's the bottom of where the bottom seal is and that would be a problem so so you're saying space c and space three is sealed is that whole area i i think i i think there's only a seal at dash line five and then above five there's two pieces of plastic that are loose together and then when you get up to well there are a bunch of dotted lines but there is this space which is mark three correct and that's simply defined as that's just described as a channel in the spec they call it a channel which is another opening where right where something could fit in there to seem well they call it that in the spec your honor uh if we go to page uh let's go up to page a 456 appendix 456 at column three again at the very top the same section we were reading from at lines four five and six each one of the channels three and four defines a duct or a hollow number six between the side wall portion seven and eight so what they're saying is this channel seems three four forming the ducts six what they call three is seen it's obviously well along the edge of three along down the side that is definitely a sealed seam but across the middle it's simply a channel that helps form it form the duct six up above and and then later at line 53 says the the seams three four are folded over yes as if that's really intended as a folded over seam which right does not help mr cobbler at all but right i think it's certainly hard to know what to make of this i think there's a lack of precision in the language in the specification there's no doubt about that but when you look at figure eight the drawings reflect pretty clearly that there's drawstrings in the upper portion of the bag that their purpose is to cinch the bag that's what they're there for and the examiner's point is keeping those drawstrings within a duct six that's reasonable in height uh prevents them from dropping down too low accordingly in the examiner's view and based on the prior references it would have been obvious to have a seal if you want to call it a seam a seal along the length of unmarked dotted line just below six there that's basically their the examiner's position and the board affirmed that position based on this evidence your honor okay any more questions for the government thank you very much thank you mr shell thank you your honors uh the the examiner found that works teaches the hem seal is important to keep the drawstring at an accessible position and the government repeats that position that's just wrong uh warts teaches accessing the drawstrings 18 by positioning them outside of the bag in the notches that's shown in figures two four and seven and so warrants has no concern about the drawstring dropping because the the strings are collected outside of the bag meyer says nothing about a drawstring drop or concern about it and meyer doesn't teach that meyer uses knots knots 12 on each end if a drawstring were to sag hypothetically you wouldn't have to worry about it so you just pull pull the knot at end the government in its brief points to some language in meyer but but both as we say in response both of the portions that meyer uh the government relies on admire actually presume the drawstring is there uh without worrying about some hypothetical line so the drawstrings already solve this problem which is really uh a a search for rationale to combine the references but you heard mr lamarca argue that that in fact this really isn't a combining of references they're saying that words teaches the fact that that there's a two-ply sidewall um with two spaced apart seals with the two-ply sidewall and it doesn't matter what the purpose of it is because you could adapt that structure to what is at least ambiguously disclosed in meyer in other words warrants was just informative of what one of skill in the art would have understood meyer to be well perhaps your honor but let me say the actual rejection is is my review of warrants but in either event if we assume if i assume hypothetically that warrants is sufficiently close that even though it's not exact there's still the issue of why would you combine it warrants doesn't have a problem with drawstrings drooping and meyer doesn't have a problem with drawstrings drooping they both have their own solution meyer meyer was concerned about a knife effect when you pull the drawstrings at the top of the bag that's what meyer was concerned about meyer wasn't concerned about drooping but that's why the knots were there the knots would keep the string from drooping and somebody just pull it and pull the drawstring out and again the disclosures in meyer on which the government relies actually presume the drawstring is available not one they have to find uh let me just close with uh both both meyer and warrants are 20 precede the filing date of mr cobbler's application by 22 years uh in the leo pharmaceutical case uh the court did note that 22 years of silence is is an indication of hindsight and i mentioned that in response to your honor's question about ksr if if the court has no other questions any more questions no more questions okay thank you thank you both the case is taken under submission